# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | |
| MABVAX THERAPEUTICS ) | Bankruptcy Case No. 19-10603 (JTD) |
| HOLDINGS, INC., *et al.*, ) | |
| ) | |
| Reorganized Debtors. ) | |
| ) | |
| BEN BRAUSER, DAN BRAUSER, ) | |
| GREG BRAUSER, AND JOSH ) | |
| BRAUSER, ) | |
| ) | Civil Action No. 23-cv-671 (GBW) |
| Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| J. DAVID HANSEN, ) | |
| ) | |
| Appellee. ) | |

## APPELLANTS' REPLY BRIEF

    Christopher P. Simon (No. 3697)
    Michael L. Vild (No. 3042)
    Kevin S. Mann (No. 4576)
    CROSS & SIMON, LLC
    1105 N. Market Street, Suite 901
    Wilmington, DE 19801
    (302) 777-4200
    mvild@crosslaw.com
    csimon@crosslaw.com
    kmann@crosslaw.com

    *Attorneys for Appellants Ben Brauser, Dan Brauser, Greg Brauser and Josh Brauser*

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ..........................................................................................................1

II. DISPUTES OF FACT....................................................................................................2

III. ARGUMENT..................................................................................................................4

    A. The Legal Standard of Dismissal Before Trial ..........................................................4

    B. Hansen Has A Fiduciary Duty of Loyalty to Holders of Interests............................6

    C. Hansen is Subject to the Disinterestedness and Disclosure Standards ....................6

    D. Hansen Has Breached His Fiduciary Duty By Continuing to Serve With a Plain Conflict of Interest................................................................................................8

IV. CONCLUSION...............................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Guth v. Loft*,
5 A.2d 503 (Del. 1939) ..........................................................................................................8

*In re Fruehauf Trailer Corp.*,
369 B.R. 817 (Bankr. D. Del. 2007) ......................................................................................6

*In re Health Diagnostic Laboratory, Inc.*,
584 B.R. 525 (Bankr. E.D. Va. 2018) ....................................................................................7

*In re M.T.G. Ltd.*,
2007 WL 2156378 (Bankr. S.D. Fla. Jul. 26, 2007) ..............................................................7

*In re New Century TRS Holdings, Inc.*,
2013 WL 12324114 (Bankr. D. Del. Jul. 9, 2013) .................................................................7

*Rome v. Braunstein*,
19 F.3d 54 (3d Cir. 1994) .......................................................................................................8

**Statutes**

11 U.S.C. § 324 ............................................................................................................................7

11 U.S.C. § 327 .........................................................................................................................6, 7

**Rules**

Fed. R. Bankr. P. 2014 ..............................................................................................................6, 7

Fed. R. Bankr. P. 7012 ..................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1, 2, 4, 5

I.  **INTRODUCTION**

This appeal asks whether the Bankruptcy Court properly dismissed a case *at the initial pleadings stage* filed by a plan beneficiary seeking a determination whether an admitted fiduciary can continue to serve when he holds personal claims and interests that are directly adverse to the beneficiaries he serves. Appellants contend that the law does not support that outcome, and that the Bankruptcy Court erred by dismissing a case that pled a plausible and viable claim for relief.

Importantly, the Answering Brief of Appellee, the Plan Administrator[1] was written as if this matter had been decided on the merits or after trial, rather than on a motion to dismiss. The Plan Administrator asserted facts in his Answering Brief that appear nowhere in the Motion to Remove and are likely contested. Remarkably, the only cited source for many of the contested facts that the Plan Administrator alleged in his Answering Brief is his own response to the Motion to Remove filed in the Bankruptcy Court.[2] *See* Ans. Br. at 4 (referring the Court to A0312).

While the parties in the Bankruptcy Court did engage in limited discovery on the Motion to Remove, the Bankruptcy Court did not consider any of the facts developed in discovery. In fact, the Bankruptcy Court denied the Appellants the opportunity to present facts in an evidentiary hearing as the Appellants had expected to occur. Rather, the Bankruptcy Court short circuited the process and decided to dismiss the Motion to Remove pursuant to Bankruptcy Rule 7012 and Federal Rule 12(b)(6).

So, the question that this appeal presents – whether a fiduciary who is administering a confirmed bankruptcy plan can keep his job when he holds personal interests that directly conflict

---

[1] Cited herein as "Ans. Br. at __."

[2] Capitalized terms not defined herein carry the definition from the Appellants' Opening Brief.

with other parties in interest – remains to be decided.  The Appellants, holders of preferred interests in the Debtors, submit that the plain answer to this question is "no."  The Plan Administrator, for obvious reasons, chose not to respond to this question.  Furthermore, as argued in their Opening Brief, the Appellants assert that, when considered on a motion to dismiss standard, they have alleged more than sufficient facts to overcome a motion to dismiss.

## II.     DISPUTES OF FACT

The "Counter-Statement of the Facts" contained in the Answering Brief and the averments that it contains demonstrate plainly why it was error for the Bankruptcy Court to dismiss the Motion to Remove without conducting an evidentiary hearing.  The 7-1/2 pages of "facts" in the Answering Brief (Ans. Br. at 4-11) attempt to bring before this Court matters far beyond those asserted in the Motion to Remove.  Moreover, despite the unambiguous ruling of the Bankruptcy Court that the adequacy of the Motion to Remove would be judged solely on a Rule 12(b)(6) standard, Hansen argues that this Court's consideration of the matter "should not be confined to the averments in the Motion to Remove." (Ans. Br. at 4, n. 2).[3]  Hansen should not be permitted to argue that the decision of the Bankruptcy Court to dismiss the Motion to Remove should be affirmed, but upon a standard that the Appellants were prevented from arguing and upon a set of facts that the Appellants were prevented from proving to the Bankruptcy Court.  Simply put, Hansen cannot have his cake and eat it, too.

---

[3] The cases that Hansen cites in support of this claim stand for the unremarkable propositions that, when considering a motion to dismiss, the Court i) can consider the contents of documents upon which the complaint relies, and ii) need not accept bald assertions or legal conclusion.  Those cases do not support Hansen's argument that this Court, when considering an appeal of the Bankruptcy Court's decision on a motion to dismiss, should consider "facts" that the Bankruptcy Court did not find and upon which the Bankruptcy Court did not rely.

In any event, Hansen's "Counter-Statement of the Facts" makes the following assertions that were not alleged in the Motion to Remove and that the Appellants were not permitted to contest in an evidentiary hearing:

- Hansen's holding of 186,000 shares of the Debtors' common stock is "*de minimis.*" (Ans. Br. at 4). The only source cited for these "facts" are Hansen's own pleading filed in opposition to the Motion to Remove.

- Hansen's holdings of the Debtors' common stock represent "approximately 0.8% of the fully diluted shares outstanding." This "fact," again, is sourced only to Hansen's pleading in opposition to the Motion to Remove. Moreover, full dilution of the Debtors' common stock is not explained or described.

- Hansen will increase his percentage share in the Debtors' common stock to 1.3% if he is successful in the California Action. This "fact" is sourced solely to Hansen's pleading in opposition to the Motion to Remove.

- Hansen's proof of claim was reduced as the result of "slight objection" from Debtors' counsel. (Ans. Br. at 5-6). The source cited for this "fact," which was not alleged in the Motion to Remove is the stipulation that allowed Hansen's claim. That stipulation was signed by Hansen on his own behalf **and by Hansen's own counsel**, on behalf of the Debtors.

- Principal assets of the Post-Confirmation Estates include certain licenses that Mr. Hansen purportedly negotiated and purportedly continues to monitor. (Ans. Br. at 6-7). The cited source for this "fact" is the confirmed plan. Yet, nothing in the plan can possibly support a "fact" that supposedly occurred after confirmation of the plan, *i.e.*, Hansen's continued monitoring of the licenses.

3

- "Hansen has done an exemplary job as Plan Administrator." (Ans. Br. at 7). Obviously, the Appellants contest this "fact" that was not contained in the Motion to Remove.

- Hansen made multiple statements of fact regarding the California Litigation, none of which are either true or contained in the Motion to Remove. For instance, Hansen claims that the Appellants sued Hansen "with the transparent hope of leveraging a settlement of the California Litigation." (Ans. Br. at 8). Hansen cites no evidence for this supposed "fact."

- Hansen then makes additional assertions relating to the California Litigation including that "the estate has not paid a single penny to defend David Hansen in his personal capacity." (Ans. Br. at 10). Once again, the only source cited for the "fact" is Hansen's pleading filed in the Bankruptcy Court.

It is black-letter law that on a motion to dismiss, the court is to consider as true the well-pleaded facts in a complaint in order to test the legal sufficiency of the claims. None of the foregoing listed "facts" that Hansen suggests that this Court should consider were pled by the Appellants. Moreover, the Bankruptcy Court denied the Appellants the opportunity to contest any of Hansen's supposed "facts" and to prove their case by ruling that the Motion to Remove failed to state a claim. As argued in the Appellants' Opening Brief and below, that decision was error.

### III. ARGUMENT

#### A. The Legal Standard of Dismissal Before Trial

The Bankruptcy Court decided to treat the Motion to Remove as the complaint in an adversary proceeding. Opinion at 3, n.8. Accordingly, even though Hansen never moved to dismiss the Motion to Remove and never argued that the Motion failed to meet the Rule 12(b)(6)

4

standard, the Court reviewed the sufficiency of the allegations under that rubric. Nevertheless, other than noting the Rule 12(b)6 standard, nowhere in the Answering Brief does Hansen attempt to argue that the Motion to Remove fails to state a claim under Rule 12(b)(6).

The relevant facts alleged in the Motion to Remove, as more fully described in the Appellants' Opening Brief are as follows:

- Hansen is the Plan Administrator;
- In that role, Hansen has a fiduciary duty to all beneficiaries of the Plan, including creditors and holders of equity interests;
- Hansen was a creditor of the Debtors and the Debtors' representative prior to, and concurrently with his decision to allow and pay his own claim, in full with interest;
- Hansen continues to hold a common equity interest in the Debtors' estates;
- Hansen's common equity interest is subordinate to preferred equity interests in the Debtors' estates;
- The Appellants hold preferred and common equity in the Debtors' estates;
- In order to complete the administration of the Debtors' estates, Hansen will have to evaluate the validity and priority of all outstanding equity interest in the Debtors' estates, including his own;
- The reduction, subordination or disallowance of any proof of claim or any proof of interest in the Debtors' estates will redound to Hansen's personal financial benefit;
- Hansen is apparently using funds from the Debtors' estates to fund the California Litigation in which he is both a plaintiff and a cross-defendant; and
- Hansen has a disabling conflict of interest.

5

Given the relevant legal standard, these facts are sufficient on their face to demonstrate that the Appellants have a "plausible claim for relief."

### B.   Hansen Has A Fiduciary Duty of Loyalty to Holders of Interests

In their Opening Brief, the Appellants argued that Hansen has a fiduciary duty to the holders of the Debtors' preferred and common interests. Hansen apparently concedes this fact, because he made no argument to the contrary in his Answering Brief. In addition, Hansen chose not to address either the scope of his fiduciary duties or his clear conflict of interest with those to whom he owes those duties. Instead, Hansen made a series of technical arguments and failed to address any of the authority that Appellants cited and discussed.

### C.   Hansen is Subject to the Disinterestedness and Disclosure Standards

In his Answering Brief, Hansen asserts that the disinterestedness and disclosure requirements contained in section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 are inapplicable to a post-confirmation plan administrator. Curiously, the only authority that Hansen cites for this proposition is the decision of the Bankruptcy Court **in this very case**. (Ans. Br. at 14-16). Hansen failed to rebut, distinguish, or even to mention the case authority upon which Appellants rely. That authority, as argued more fully in Appellants' Opening Brief, stands for the following propositions:

- A post-confirmation plan administrator owes fiduciary duties to parties in interest and those duties are broad in scope and are even higher than those imposed upon a retained professional. *In re Fruehauf Trailer Corp.*, 369 B.R. 817, 824 (Bankr. D. Del. 2007) (The liquidating trustee was "[m]ore than just a professional retained by the trust . . .." and has duties that are "much broader in scope.").

6

- A post-confirmation plan administrator is, in fact, subject to the disinterestedness and disclosure standards of section 327 of the Bankruptcy Code and the disclosure requirements of Bankruptcy Rule 2014. *In re M.T.G. Ltd.*, 2007 WL 2156378, *5 (Bankr. S.D. Fla. Jul. 26, 2007); *see also In re New Century TRS Holdings, Inc.*, 2013 WL 12324114, *5 (Bankr. D. Del. Jul. 9, 2013) (Assuming without deciding that post-confirmation plan administrator was subject to removal under section 324 of the Bankruptcy Code).

- The authority upon which the Bankruptcy Court relied in this matter is both distinguishable and actually supports the Appellants' arguments. *In re Health Diagnostic Laboratory, Inc.*, 584 B.R. 525, 533-36 (Bankr. E.D. Va. 2018) (While stating, in dictum, that the disinterestedness standard was not applicable, the Court found that the proposed post-confirmation trustee in that case had no disqualifying conflict of interest regardless of the applicable standard of appointment).

Hansen then argues that because the Appellants failed to object to his retention as Plan Administrator at the time that the Plan was confirmed, that they should not be heard to object now to his plain conflict of interest. That argument fails for at least two reasons. First, the Appellants had no reason to object to Hansen's retention at the time of plan confirmation. At that point, equity interests were canceled, were expected to receive no distribution, and were deemed to have rejected the plan without a vote. Indeed, Hansen may not have had an actual conflict of interest with the holders of the Debtors' equity at the time of his appointment as Plan Administrator. Accordingly, holders of equity interests at that time had no particular interest in the identity or qualifications of the Plan Administrator.

7

Second, and relatedly, bankruptcy fiduciaries must remain disinterested **throughout** their work for the bankruptcy estate. *See, e.g., Rome v. Braunstein*, 19 F.3d 54, 57-58 (3d Cir. 1994) ("[A]s the bankruptcy court is invested with ample power to deter inappropriate influences upon the undivided loyalty of court-appointed professionals *throughout their tenure*, the need for professional self-scrutiny and avoidance of conflicts of interest does not end upon appointment.") (emphasis in original). So, even if Hansen were disinterested at the time of his appointment as Plan Administrator, he is required to remain conflict free for the entirety of his tenure. Once all of the outstanding claims were paid in full, meaning that a distribution to equity was in the offing, Hansen's became conflicted. At that point, he should have stepped aside as Plan Administrator or taken some other action to insulate himself from the conflict. Yet, Hansen chose not to take any corrective action, even after the Appellants raised the issue of his conflict of interest.

### D. Hansen Has Breached His Fiduciary Duty By Continuing to Serve With a Plain Conflict of Interest

In the next section of the Answering Brief, Hansen purports to argue that he has not breached his fiduciary duties to holders of interests. (Ans. Br. at 16-18). Oddly, this section of the brief makes no effort to address Hansen's conflict of interest. The basis for the Motion to Remove and this appeal, is that Hansen is a conflicted fiduciary that should be removed due to the conflict. *See Guth v.* Loft, 5 A.2d 503, 510 (Del. 1939) (The duty of loyalty "requires an undivided and unselfish loyalty to the corporation [and] demands that there by no conflict between duty and self-interest."). Because he has an unavoidable conflict, Hansen should not be permitted to continue to make decisions that will affect both the interests of equity holders and Hansen's own personal interest.

Hansen's only apparent defense to the conflict argument is that his holdings are purportedly "*de minimis*." (Ans. Br. at 4, 18). But, that argument proves too much. Hansen admits to owning

8

0.8% of the Debtors' equity on a fully diluted basis.[4] He also admits that if Debtors are successful in the California Litigation, those holdings will increase to 1.3% of the Debtors' outstanding equity. So, Hansen is litigating a case in a fiduciary capacity that, if successful, will nearly double his ultimate personal recovery as a common interest holder. Furthermore, if Hansen successfully objects to other proofs of interest, whether preferred or common, his percentage interest will continue to increase. A fiduciary's decisions should be based solely upon the undivided loyalty that he owes to beneficiaries. When the personal financial interests of the fiduciary are also directly affected by those decisions, that conflict of interest requires that the fiduciary either step aside or be replaced.

### IV. CONCLUSION

Hansen is wholly conflicted. Under any standard that the Court uses to review his conduct, Hansen should be removed as Plan Administrator and be replaced with an unconflicted and disinterested person. For the foregoing reasons and those contained in the Appellants' Opening Brief, the Appellants respectfully request that the Court reverse the judgment of the Bankruptcy Court in this matter and remand the case for further proceedings.

---

[4] As stated above, Appellants unable to confirm this figure.

| | |
|---|---|
| Dated:  December 22, 2023 | **CROSS & SIMON, LLC**<br><br> /s/ Michael L. Vild<br>Michael L. Vild (No. 3042)<br>Christopher P. Simon (No. 3697)<br>Kevin S. Mann (No. 4576)<br>1105 North Market Street, Suite 901<br>Wilmington, Delaware 19801<br>(302) 777-4200<br>mvild@crosslaw.com<br>csimon@crosslaw.com<br>kmann@crosslaw.com<br><br>*Counsel for Appellants Ben Brauser, Dan Brauser, Greg Brauser, and Josh Brauser* |